

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **99 C 4223** | **DATE** | Sept. 9, 2002 |
| **CASE TITLE** | USA ex rel Willie Russell    v | J. Ronald Haws | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
Memorandum opinion and order entered. Accordingly, the Court denies petitioner's petition for a writ of habeas corpus and denies as moot, his motion to expand the record.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **31** |
| | No notices required. | | | | |
| X | Notices mailed by judge's staff. | | | SEP 13 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | CDY | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| GDS | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

SEP 1 3 2002

UNITED STATES OF AMERICA, ex rel. )
WILLIE RUSSELL, )
)
            Petitioner, )
)        No.    99 C 4223
    v. )
)        Judge Robert W. Gettleman
J. RONALD HAWS, )
)
            Respondent. )

## MEMORANDUM OPINION AND ORDER

After his first trial resulted in a hung jury and he was convicted at his second trial and

sentenced to twenty years for attempted murder and ten years for home invasion, Willie Russell

("Russell") filed a *pro se* petition[1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 using

a self-prepared Petition for Writ of Habeas Corpus-- Person in State Custody (the "Petition").

Russell also filed a motion to expand the record. For the reasons stated in this opinion, the court

finds the majority of petitioner's claims are procedurally defaulted or otherwise cannot be used as

the basis for habeas relief, and the sole remaining issue is without merit. Therefore, the court

denies the Petition. Based on this denial, the court denies Russell's motion to expand the record

as moot.

---

[1]After the respondent filed his answer and Russell filed a reply, this court granted
Russell's motion to appoint counsel and gave appointed counsel time to meet with the petitioner
and file an additional reply to the respondent's answer. In open court, appointed counsel told the
court that he had no legal basis and thus would not be filing an additional reply. Accordingly, all
documents filed on petitioner's behalf have been briefed *pro se*.

31

## FACTS[2]

At 6:15 p.m. on January 30, 1994, a man forced his way into the apartment of Diane
Louise ("Louise"). He repeatedly stabbed her and, although the attack resulted in serious injury,
Louise survived. At the time of the attack, which occurred on Super Bowl Sunday, Louise was
cleaning her apartment. She had just taken out garbage and returned to her apartment when she
heard a knock on her door and opened the door. A man wearing a hooded white sweatshirt
lunged at her and into the apartment, stabbing her repeatedly with a large kitchen knife as she
attempted to fight him off. She testified that as the attacker left, he stopped and stared at her
before backing out of the door.

Russell, who also lived in Louise's apartment complex, was charged with the crime.
Russell's first two encounters with police, however, took place prior to the attack on Louise. The
first encounter occurred on January 24, 1994. Russell was home with a friend when police
appeared at his door accompanied by a woman, Judith Honig ("Honig"), who lived nearby and
had also been the victim of an attack. Police officers testified that Honig thought her attacker
might be her neighbor "Will." At the time she was brought to his door, however, she did not
identify him. Police talked to Russell at that time, and one of the officers examined some of his
clothing.

Russell's next encounter with detectives, including Detective Ryan, occurred on
January 29, 1994, when Russell exited a cab several blocks away from his apartment. On this

---

[2]This recitation of the facts is drawn from the Illinois Appellate Court's modified order
upon denial of rehearing on Russell's direct appeal, People v. Willie Russell, No. 1-95-1823 (Ill.
App. Ct. April 27, 1998), which are presumed correct. Mahaffey v. Schomig, 294 F.3d 907, 915
(7th Cir. 2002).

occasion Russell was patted down and asked for personal information such as his birth date. On February 2, 1994, police entered Russell's home without a warrant. Detective Ryan testified that Russell let them into his apartment, while Russell contended the officers forced their way in.

Russell was taken into custody and a lineup was conducted in which he was tentatively identified by Tim Fox, a neighbor of Louise's, as the person matching the description of the attacker whom Fox saw outside Russell's apartment shortly after the attack on Louise. On February 10, Louise positively identified Russell as her attacker in a second lineup.

After a jury found Russell guilty, the court sentenced him to twenty years for attempted first degree murder and ten years for home invasion, to be served consecutively. Prior to trial, Russell filed a pre-trial motion to quash arrest and suppress evidence on the basis that there was no probable cause for his arrest. The trial court granted Russell's motion to quash based on the warrantless arrest in his home and the absence of exigent circumstances. The trial court denied the motion to suppress identification evidence obtained through the two lineups, finding that such evidence was sufficiently attenuated from the actual arrest, but granted the motion to suppress other evidence obtained as a result of the arrest.

## DISCUSSION

In his Petition, Russell raises the following issues: 1) denial of due process because the State failed to prove him guilty beyond a reasonable doubt; 2) denial of due process because he was denied a fair trial in the presence of an impartial jury and his right pursuant to appellate process; 3) denial of his Sixth Amendment right to effective assistance of trial counsel and appellate counsel on direct appeal; and 4) denial of due process and equal protection because the thirty-year consecutive term of imprisonment imposed on Russell is excessive and an abuse of

3

discretion, and must be reduced because it violates the proportionality and rehabilitation requirement of the Illinois Constitution Article I, Section II.

In support of his second claim, the denial of his due process rights, Russell asserts that: a) the court should have suppressed identification evidence as the fruit of an illegal arrest, and the appellate court erred in finding that probable cause to arrest existed; b) the appellate court erred in holding the plain error exception to the waiver rule was appropriate in this case on the basis that no prejudice occurred since the evidence was closely balanced; c) there was improper impeachment; d) the court improperly ruled that other crimes evidence would be allowed to rebut evidence of Russell's reputation for peacefulness if such evidence would have been presented; e) prejudice occurred when on cross-examination, the prosecutor asked Russell if the prosecution's witnesses had lied; and, f) closing arguments made by the State were prejudicial and improper.

In its answer to the Petition, the respondent asserts that claims 1, 3, and 4 are procedurally defaulted for various reasons and Russell has otherwise failed to meet the standard for the court to reach the merits of procedurally defaulted claims. With regard to those issues raised in Russell's second claim, the respondent asserts that: 1) most of the issues are procedurally defaulted because they were raised and argued solely on state grounds and thus are closed to habeas corpus review; 2) the issue in claim 2(a) is not amendable for review in a habeas petition; and, 3) there is no merit to the issue in claim 2(c).

REVIEW OF RUSSELL'S STATE COURT APPEALS

Russell is currently incarcerated in Centralia Correctional Center. After a jury found Russell guilty of attempted murder and home invasion and he was sentenced to 30 years

4

imprisonment, Russell through counsel filed a direct appeal, People v. Russell, No. 95-1823. In this appeal Russell asserted the following claims: 1) the court should have suppressed identification evidence because it was the fruit of an unlawful arrest made without probable cause; 2) admission of Russell's suppressed statement to impeach his trial testimony violated his Fourth Amendment rights because the statement was not inconsistent with his testimony on direct examination or given in response to proper cross-examination; 3) Russell was denied a fair trial when the prosecutor cross-examined him regarding whether prosecution witnesses whose testimony contradicted Russell's testimony were lying, and Russell was prevented from offering evidence of his character for peacefulness when the court ruled the State would be permitted to rebut that evidence with proof that Russell had committed another crime; 4) argument by the prosecution appealing to the passions of the jury, asking the jurors to draw a negative inference from Russell's exercise of his rights and making misleading comparisons to bolster the identification evidence denied Russell due process; and, 5) Russell's cumulative sentence of 30 years must be reduced to minimum terms of imprisonment considerate of his rehabilitative potential.

Following a petition for rehearing, the Illinois Appellate Court issued a modified order upon denial of rehearing affirming Russell's convictions and sentence. People v. Russell, No. 95-1823 (Ill. Ct. App. April 27, 1998). Russell filed a petition to the Illinois Supreme Court on appeal number 95-1823, asserting the following: 1) "leave to appeal should be allowed because, contrary to decisions of other appellate courts, the appellate court concludes that a general description can furnish probable cause to arrest, even where the police are aware of other circumstances indicating defendant is not the probable offender"; and 2) "leave to appeal should

5

be allowed because the appellate court misjudges the strength of the prosecution's case in concluding that several serious errors [improper impeachment, improper other crimes evidence for rebuttal, prejudicial cross-examination, improper closing argument] that occurred at petitioner's trial should not be noticed as plain error." Russell's petition to the Illinois Supreme Court was denied on October 6, 1998.

On April 25, 1998, while his direct appeal was pending, Russell filed a petition for post-conviction relief along with a motion to stay proceedings on such petition, alleging that: 1) Russell received ineffective assistance of trial counsel for various reasons; 2) Russell received ineffective assistance of appellate counsel for failing to raise the issue of trial counsel's ineffectiveness; 3) the cumulative effect of improper prosecutorial remarks in his closing argument denied him a fair trial; and, 4) the trial court abused its discretion when it improperly admitted Russell's suppressed statements to impeach his trial testimony and when it sentenced him to consecutive sentences. The stay was granted.

On May 19, 1998, Russell filed a letter with the Illinois Circuit Court requesting that the stay on his petition for post-conviction relief be lifted and additionally filed a supplemental post-conviction petition. The supplemental post-conviction petition alleged that: 1) he was denied his due process rights as a result of the prosecutor's cross-examination of Russell as to whether the prosecution's witnesses, whose testimony contradicted Russell's, were lying; 2) he was deprived of his Sixth Amendment right to effective assistance of trial counsel; 3) improper prosecutorial misconduct deprived him of a fair trial; 4) he was denied his due process rights as a result of the State improperly relying on inflammatory argument; 5) he was denied his Sixth Amendment right to effective appellate counsel in his direct appeal; 6) the trial court failed to consider Russell's

potential for rehabilitation during sentencing; and, 7) Russell was not proven guilty beyond a reasonable doubt.

In a memorandum opinion and order issued on October 2, 1998, the circuit court issued an order dismissing the petition for post-conviction relief, finding Russell's claims were meritless and that Russell's claims that the State failed to prove his guilt beyond a reasonable doubt, that he received ineffective assistance of trial counsel, that the trial court erred when it failed to consider Russell's potential for rehabilitation when imposing sentence, and that the trial court erred when it imposed consecutive sentences, were barred by the doctrine of waiver because such issues "clearly involve matters of record that could have been raised on direct appeal." People v. Russell, slip opinion at *6 (Ill. Cir. Ct. Oct. 2, 1998), citing, People v. Collins, 606 N.E.2d 1137 (Ill. 1992); People v. Mack, 658 N.E.2d 437, 440 (Ill. 1995).

Russell appealed the circuit court's denial of his petition and supplemental petition for post-conviction relief and this appeal was assigned appellate number 98-4218. On December 10, 1998, the State Appellate Defender representing Russell on this appeal moved to withdraw and substitute the Cook County Public Defender's office. The motion was based on the fact that the Cook County Public Defender's office had previously been appointed appellate counsel for Russell in a mandamus action Russell had filed in which he appealed the denial of his request for the common law record and trial transcripts from his trial.[3]

_____

[3]The motion stated that the Office of the State Appellate Defender and the Cook County Public Defender's Office have an agreement that when one of their offices is currently representing a defendant on appeal, that office will also represent that same defendant on any subsequent appeals he or she files.

On April 20, 1999, after advising Russell in writing, the Cook County Public Defender's office submitted a motion to withdraw as appellate counsel under Pennsylvania v. Finley, 481 U.S. 551 (U.S. 1987), in Russell's post-conviction appeal, number 98-4218. The motion to withdraw stated that the "petition fails to allege any facts that give rise to a claim of a constitutional deprivation ... [and] [t]herefore, there are no appealable issues in the case." On April 29, 1999, the appellate court ordered that the motion to withdraw could be filed and would be taken with the case. On July 12, 1999, Russell filed a response to the public defender's motion setting forth an "explanation" as to why his petition for post-conviction relief had merit. On October 18, 1999, the appellate court affirmed the denial of Russell's petition for post-conviction relief in appeal number 98-4218. Russell did not file a motion to reconsider the ruling in appeal number 98-4218 or a petition for leave to appeal to the Illinois Supreme Court, and the time for filing such petition has expired.

As noted above, in addition to his post-conviction petition, Russell filed a mandamus action and a subsequent appeal from the circuit court's denial of the mandamus action. The mandamus appeal was assigned appellate number 98-2479. On September 1, 1998, the Cook County Public Defender appointed to Russell moved to withdraw pursuant to Finley in appeal number 98-2479. On July 7, 1999, the appellate court granted the motion to withdraw and affirmed denial of Russell's petition for mandamus. On April 9, 1999, Russell filed a petition for leave to appeal to the Illinois Supreme Court from appeal number 98-2479, and on June 2, 1999, the Illinois Supreme Court denied the petition for leave to appeal.

## PROCEDURAL REQUIREMENTS

"Before a Federal court will consider a habeas petition, a petitioner must satisfy several procedural requirements." Mahaffey v. Schomig, 294 F.3d 907, 914 (7th Cir. 2002). First, a habeas petitioner must exhaust all remedies available in state courts. *Id.*; O'Sullivan v. Boerckel, 526 U.S. 838, 839 (U.S. 1999); 28 U.S.C. §2254(b)(1)(A) (court may not grant a habeas corpus petition unless the petitioner has "exhausted the remedies available in the courts of the State"). Interpreting the exhaustion requirement, the Supreme Court held that "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Boerckel, 526 U.S. at 842. The Boerckel court reasoned that, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

In order to satisfy the exhaustion requirement under Illinois' appellate system, a habeas petitioner is required to have presented his claims to the Illinois Supreme Court before filing his petition for federal habeas relief, even though review by the Illinois Supreme Court is discretionary. Boerckel, 526 U.S. at 846-847. Failure to petition for discretionary review to the state's court of last resort "results in a procedural default that precludes federal review." Hough v. Anderson, 272 F.3d 878, 892 (7th Cir. 2001).

The Boerckel court stated that this rule "reduces friction between the state and federal court systems by avoiding the 'unseemliness' of a federal district court's overturning a state court

conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." Boerckel, 526 U.S. at 845.

Russell's first claim is that he was not proven guilty beyond a reasonable doubt. Respondent asserts Russell is procedurally barred from raising this issue in his habeas petition for the following reasons: 1) Russell did not include this issue in his response to the appellate defender's motion to withdraw from Russell's post-conviction appeal nor was any petition for leave to appeal to the Illinois Supreme Court filed from the affirmance of the dismissal of his post-conviction petition in appeal number 98-4218; and, 2) Russell failed to raise this issue in his direct appeal, and while he raised the issue in his post-conviction petition, the circuit court found that the issue was waived by Russell's failure to raise the issue on direct appeal.

As set forth above, this issue was first raised on appeal in Russell's petition for post-conviction relief. Russell did not file a petition to the Illinois Supreme Court seeking appeal from the Illinois Appellate Court's affirmance of the trial court's denial of this petition in 98-4218. Accordingly, under Boerckel, the court finds that Russell has failed to exhaust this claim.

"A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and prejudice arising from failure to review the claims, or that failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice." Mahaffey, 294 F.3d at 915; Edwards v. Carpenter, 529 U.S. 446, 451 (U.S. 2000) ("We therefore require a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim").

"The Supreme Court has defined 'cause' as some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded

10

compliance with the state's procedural rule." Barksdale v. Lane, 957 F.2d 379, 385 (7th Cir. 1992), *citing*, Murray v. Carrier, 477 U.S. 478, 488 (U.S. 1986). This standard applies equally to *pro se* habeas petitioners and those petitioners who are represented by counsel. Barksdale, 957 F.2d at 385, *citing*, Coleman v. Thompson, 501 U.S. 722 ("there is no constitutional right to an attorney in state post-conviction proceedings."). "Thus, a petitioner's failure to act or think like a lawyer cannot be cause for failing to assert a claim." Barksdale, 957 F.2d at 385 (*citations omitted*).

The prejudice prong is satisfied if a petitioner can "show not merely that the errors at ... trial created the possibility of prejudice, but that they worked to actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (U.S. 1986).

If a habeas petitioner fails to show cause or prejudice for his default, he may still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to extraordinary cases, specifically those in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 326 (U.S. 1995); Dellinger v. Bowen, --- F.3d ----, 2002 WL 1895399 at *6 (7th Cir. Aug 19, 2002) ("To show 'actual innocence,' [the petitioner] must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him.").

11

In response to the respondent's failure to exhaust argument, Russell appears to assert that he was confused by the two appellate numbers assigned to his mandamus appeal and the appeal from his petition for post-conviction relief. Russell states, without authority, that because he included certain issues in his petition to the Illinois Supreme Court appealing from 98-2479 (the affirmance of the denial of his petition for mandamus), even though those issues were not addressed in his mandamus action or the appeal therefrom the supreme court had "an opportunity to review" the issues and thus they are not waived.

While such knowledge is not relevant in considering the merits of this argument, the court notes that in his *pro se* petition for post-conviction relief Russell made clear his knowledge of the exhaustion requirement. In his petition to the circuit court seeking post-conviction relief, Russell discusses that his direct appeal was presently pending before the Illinois Appellate Court on a petition for rehearing and that "[a]s soon as a court decision is rendered in Petitioner's Petition for Rehearing and if, such ruling is sought to be unfavorable for the petitioner, he plan to file pro se, a Petition for Leave to Appeal to the Illinois Supreme Court, so that he could preserve and not waive any legal issues in case he has to file later, a Petition for Writ of Federal Habeas Corpus, as it relates to Case no. 94 CR-5525."

While the state appellate defender appointed as counsel in Russell's appeal from the denial of his petition for post-conviction relief erred in the body of his motion to withdraw as counsel from appeal number 98-4218 by stating that the appeal from the denial of Russell's petition for post-conviction relief was assigned appeal number 98-2479, the court finds that the following evidence establishes that Russell was alerted and had knowledge that his appeal from

12

the Illinois Appellate Court's denial of post-conviction relief was assigned appeal number 98-4218, and that the denial of 98-4218 was issued on October 18, 1999.

Russell filed the instant petition for habeas corpus on June 16, 1999. On July 14, 1999, Russell filed a "plea in abatement" requesting the court to abate his habeas action because Russell had learned that his post-conviction action was still pending in the state appellate court. In October 1999, Russell moved to drop the plea in abatement and asked to move forward on his habeas petition. Russell also sent the court a handwritten note, dated October 21, 1999, in which he stated:

> I would like the "Plea in Abatement" status dropped. I would like for my Petition For Habeas Corpus to move forward according to Court docket because as of Oct. 18, 1999 my appeal on my post conviction petition has been denied. (98-4218).[4]

It is clear from the evidence set forth above that Russell had full knowledge of the need to exhaust state court remedies, Russell knew that his appeal from the denial of his petition for post-conviction relief, appeal number 98-4218, was denied on October 18, 1999, and that there were no external forces barring or interfering with his ability to petition the Illinois Supreme Court for appeal from appeal number 98-4218. Further, Russell has not pled or argued, nor is there evidence in the record, that Russell could meet the standard necessary to establish the "miscarriage of justice" exception. Accordingly, the court finds that under Boerckel, Russell's

---

[4]In his response to the respondent's answer, Russell attached a letter written by himself and a responding letter from the clerk of the Illinois appellate court evidencing what appears to be a possible confusion regarding the proper numbers applicable to Russell's appeal from his mandamus action and his appeal from the denial of his petition for post-conviction relief. These letters, however, are dated in July 1999, months before Russell was clearly advised that the Illinois Appellate Court denied his appeal from the denial of his petition for post-conviction relief in appeal number 98-4218.

failure to file a petition for leave to appeal from the affirmance of the dismissal of his petition for post-conviction relief in appeal number 98-4218 to the Illinois Supreme Court procedurally bars review of this claim.

In addition to finding Russell has procedurally defaulted his first claim that he was not found guilty beyond a reasonable doubt, the court finds that this claim is barred by Russell's failure to meet a second mandatory procedural requirement. In addition to requiring that a petitioner petition to appeal to the Illinois Supreme Court, "the petitioner must comply with state rules to avoid procedurally defaulting his claims." Mahaffey v. Schomig, 294 F.3d 907, 915 (7th Cir. 2002). "A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." Moore v. Bryant, 295 F.3d 771, 774 (7th Cir. 2002).

"The [independent and adequate state ground] doctrine[5] applies to bar federal habeas [relief] when a state court declined to address a prisoner's federal claims because the prisoner

---

[5]The Coleman Court explained this doctrine as follows (501 U.S. at 729-730, *citations omitted*):

This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.

We have applied the independent and adequate state ground doctrine not only in our own review of state court judgments, but in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions.

14

had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-730 (1991); Stewart v. Smith, 122 S.Ct. 2578, (U.S. 2002) (petitioner's ineffective assistance of counsel claim was not reviewable in federal habeas proceeding after state court had determined, without reaching the merits, that issue had been waived in state post-conviction relief proceeding for failure to raise issue in prior state post-conviction petitions). Under Coleman and its prodigy, based on Russell's failure to meet the standards necessary to constitute an exception to a procedural bar, the court finds that Russell's claim that he was not proven guilty beyond a reasonable doubt is not reviewable by this court.

Russell's claim number three, asserting ineffective assistance of trial and appellate counsel was again raised only in his petition for post-conviction relief and, therefore, for the reasons set forth above, the court finds pursuant to Boerckel that claim three is barred from review. While Russell's fifth claim, that the thirty-year consecutive term of imprisonment imposed on Russell is excessive and an abuse of discretion and must be reduced because it violates the proportionality and rehabilitation requirement of the Illinois Constitution Article I, Section II, was originally made in his direct appeal, this argument was not made in the subsequent petition to appeal to the Illinois Supreme Court from Russell's direct appeal. Accordingly, this claim is also barred from review under Boerckel.

Turning to Russell's second claim, the denial of his rights to due process and a fair trial for various reasons, the respondent answers that four of the issues have been waived because of Russell's failure to raise the constitutional issues in the State courts, one issue cannot be used as the basis for habeas relief, and the final issue lacks merit.

15

In addition to the requirement that a petitioner file petitions to appeal both in the Illinois appellate and supreme courts, in Duncan v. Henry, 513 U.S. 364-365 (U.S. 1995), the Court stated that "exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Thus, to meet the "exhaustion" requirement, Russell "must have raised all of his claims during the course of the state proceedings, presenting each claim fully and fairly to the state courts." Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (citations omitted). "This fair representation contemplates that both the operative facts and the controlling legal principles must be submitted to the state court." Hough v. Anderson, 272 F.3d 878, 892 (7th Cir. 2001) (citations omitted); Mahaffey v. Schomig, 294 F.3d 907, 914-915 (7th Cir. 2002) (to satisfy exhaustion requirement "a petitioner must present to the state judiciary both operative facts and legal principles that control each claim").

In Hough, 272 F.3d at 892 n.4, the Seventh Circuit reiterated the "factors that bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation."

Applying the Hough analysis to the majority of issues raised in Russell's second claim, the court finds that issues 2(b),(d),(e), and (f) are procedurally barred from review. This includes Russell's claim that he was denied due process because he was denied a fair trial in the presence

16

of an impartial jury and his right pursuant to appellate process in that: 1) the appellate court erred

in holding the plain error exception to the waiver rule was appropriate in this case on the basis

that no prejudice occurred since the evidence was closely balanced; 2) the court improperly ruled

that other crimes evidence would be allowed to rebut evidence of Russell's reputation for

peacefulness if such evidence would have been presented; 3) prejudice occurred when on cross-

examination, the prosecutor asked Russell if the prosecution's witnesses had lied; and,

4) prejudicial impact of improper closing arguments made by the State.

The court has combed the record and finds that Russell's briefing on these issues, the

Illinois Appellate court's resolution of the claims, and the manner in which the matter was

presented to the Illinois Supreme Court, were all based solely on state law grounds. There was no

mention or argument that Russell's federal constitutional rights were being impugned, the cases

cited and relied upon were all state cases, and the cases did not cite to federal constitutional law.

As set forth above, the Supreme Court mandates that a petitioner "fairly present" the federal issue

to the state courts as a precondition to exhaustion. Picard v. Connor, 404 U.S. 270, 275 (U.S.

1971). Under this standard, "[i]t is incumbent on the petitioner to raise the red flag of

constitutional breach." Verdin, 972 F.2d at 1474 (citations omitted). "In short, in evaluating

federal due process claims, the inquiry must be at a sufficient level of specificity to advise the

state court of the particular Fourteenth Amendment right at issue." Id. at 1478,

In Duncan v. Henry, 513 U.S. 364, 365 (U.S. 1995), the court held that the habeas

petitioner failed to exhaust his claim by failing to properly present the claim stated in his habeas

petition that the state trial court's evidentiary ruling denied him due process of law guaranteed by

the Fourteenth Amendment, because the petitioner's claim in the state court under state law that

17

the prejudicial effect of evidence outweighed its probative value was only somewhat similar to

claim his habeas claim that the evidence was so inflammatory as to prevent a fair trial. The court

based its ruling on the following: 1) "Respondent did not apprise the state court of his claim that

the evidentiary ruling of which he complained was not only a violation of state law, but denied

him the due process of law guaranteed by the Fourteenth Amendment"; 2) "[t]he California

Court of Appeal analyzed the evidentiary error by asking whether its prejudicial effect

outweighed its probative value, not whether it was so inflammatory as to prevent a fair trial"; and

3) "[t]he state court, when presented with respondent's claim of error under the California

Evidentiary Code, understandably confined its analysis to the application of state law." *Id.*

Accordingly, the court holds that issues 2(b),(d),(e) and (f) are barred from review. While

under the "complete exhaustion" rule the fact that Russell's petition contains at least one issue

that has not been exhausted is grounds for dismissing his entire petition,[6] the court will address

the two remaining claims that the trial court: 1) failed to exclude identification evidence that was

obtained as the fruit of an unlawful arrest; and 2) improperly admitted one of Russell's

suppressed statements to impeach his trial testimony.

### REVIEW OF FOURTH AMENDMENT EXCLUSIONARY RULINGS

In claim 2(a), Russell asserts that the trial court should have suppressed identification

evidence because it was the fruit of an unlawful arrest made without probable cause. While

---

[6]*See*, Rose v. Lundy, 455 U.S. 509, 522 (U.S. 1982) ("because a total exhaustion rule
promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a
district court must dismiss habeas petitions containing both unexhausted and exhausted claims");
Rockwell v. Yukins, 217 F.3d 421, 423 (6th Cir. 2000) ("Under [the exhaustion] requirement, an
applicant may not present a 'mixed' petition containing both exhausted and unexhausted claims
to a federal court.").

Russell cited the applicable federal and state cases applying federal constitutional law to the facts, and the Illinois Appellate court applied this law to the facts, under <u>Stone v. Powell</u>, 428 U.S. 465 (U.S. 1976), this claim based on the exclusionary rule cannot be used as a basis for relief under the federal habeas corpus statute (428 U.S. at 493-495):

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force.

In a recent opinion applying <u>Stone</u>, <u>Hampton v. Wyant</u>, 296 F.3d 560, 562-563(7th Cir. 2002), the Seventh Circuit explained:

> The exclusionary rule is not enforced on collateral attack. Put otherwise, a person imprisoned following a trial that relies, in part, on unlawfully seized evidence is not "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The seizure may have violated the Constitution, but the custody does not, because the exclusionary rule is a social device for deterring official wrongdoing, not a personal right of defendants. See also <u>Reed v. Farley</u>, 512 U.S. 339, 347-48, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (emphasizing that <u>Stone</u> recognizes limitations on use of the exclusionary remedy) (plurality opinion). This also means, by the way, that the Antiterrorism and Effective Death Penalty Act does not affect <u>Stone</u>. The AEDPA's changes to §2254(d) apply only to cases within the scope of § 2254(a), which was not amended in 1996, and <u>Stone</u> is based on an interpretation of § 2254(a) that treats inaccurate administration of the exclusionary rule as outside the scope of that statute.

Russell's claim that his constitutional rights were violated by failing to suppress lineup identification evidence because it was the fruit of an unlawful arrest was fully briefed in Russell's direct appeal and addressed and considered by the Illinois Appellate Court. In its original order issued on March 16, 1998, at pages 4-9, the Illinois Appellate Court thoroughly analyzed the facts as applied to the federal constitutional law on this issue. This argument was

again made in Russell's petition to the Illinois Supreme Court from the denial of his direct appeal.

Based on the record before it, the court finds that Russell received an opportunity to fully litigate this issue in state court. Accordingly, under Stone, the court denies Russell's claim of denial of his due process rights for failure to suppress identification evidence that was the fruit of an unlawful arrest, finding that this issue cannot be used as a basis for relief in a habeas corpus proceeding.

## HABEAS CORPUS STANDARD

The court will now turn to considering the merits of the final claim left in the Petition, whether Russell was denied due process when the trial court admitted one of Russell's suppressed statements to impeach his trial testimony. Where the petitioner has met the exhaustion requirements, relief may be awarded a petitioner only if the state court adjudication of his claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Habeas corpus relief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Bischel v. United States, 32 F.3d 259, 263 (7th Cir.1994) (internal quotations and citations omitted). The record is reviewed and all reasonable inferences are drawn in favor of the government. *Id.*; Messinger v. United States, 872 F.2d 217, 219 (7th Cir.1989).

20

IMPEACHMENT EXCEPTION TO EXCLUSIONARY RULE

In claim 2(c), Russell asserts that he was deprived of his rights to due process and a fair trial based on the trial court allowing the prosecution to "smuggle" in one of Russell's suppressed statements through rebuttal testimony. In response to Russell's pre-trial motion, the trial court suppressed certain statements made by Russell to detective Ryan following the arrest in his apartment. On direct appeal Russell raised this argument and the Illinois Appellate Court held that: 1) the issue was waived because Russell's trial counsel made no objections to the alleged error during trial; and, 2) reversal was not warranted under the plain error doctrine, a limited exception to the waiver rule that is applied "where the evidence is closely balanced or the error was of such a magnitude as to have affected substantial rights and deprived the defendant of a fair and impartial trial." People v. Russell, No. 95-1823, *slip opinion* at *10-11 (Ill. App. Ct. April 27, 1998), *citing*, People v. Andras, 608 N.E.2d 310 (Ill. App. Ct. 1992).

The court of appeals reasoned (Russell, No. 95-1823, *slip op.* at *11):

> The State presented strong circumstantial evidence linking defendant to the crime, and defendant was identified by the victim both in a lineup and in court. The evidence presented by defendant as to his whereabouts at the time of the incident and attempts to establish an alibi did not create a "closely balanced" case. Moreover, a review of the entire record in this case indicates that defendant received a fair and impartial trial.

The state appellate court then addressed the issue of the impeachment by the suppressed statement and applying the proper constitutional standard--the same standard relied upon by Russell in his briefs to both the state courts and this court--to the facts and testimony elicited at trial, the court held that the suppressed statement was properly admitted. As conceded by Russell, impeachment of a defendant with a suppressed statement is permitted where the

statement satisfies legal standards of trustworthiness and is inconsistent with the defendant's testimony on direct examination or testimony elicited in proper cross-examination. *See*, People v. Haven, 446 U.S. 620, 626-627 (U.S. 1980).

In Haven, the Supreme Court specifically addressed whether this exception applied only to allow impeachment of a defendant's direct examination. Holding that the exception allows suppressed statements to be used as impeachment of both statements made on direct and cross-examination, the Court reasoned (446 U.S. at 626):

> In [Harris and Hass] the Court stressed the importance of arriving at the truth in criminal trials, as well as the defendant's obligation to speak the truth in response to proper questions. We rejected the notion that the defendant's constitutional shield against having illegally seized evidence used against him could be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent statements. ...
>
> Neither Harris nor Hass involved the impeachment of assertedly false testimony first given on cross-examination, but the reasoning of those cases controls this one. There is no gainsaying that arriving at the truth is a fundamental goal of our legal system. We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences. This is true even though a defendant is compelled to testify against his will. It is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth. The defendant's obligation to testify truthfully is fully binding on him when he is cross-examined. His privilege against self-incrimination does not shield him from proper questioning. He would unquestionably be subject to a perjury prosecution if he knowingly lies on cross-examination.

The suppressed statement at issue concerns whether Russell telephoned his girlfriend Amy Hanson on the night of the attack during half time of the Super Bowl football game and then fifteen minutes after he had spoken to Hanson, he first noticed police sirens, vehicles and personnel outside his apartment. On cross-examination Russell denied that he had told this to detective Ryan after his arrest. In response to this line of questioning, the prosecution put on

22

detective Ryan as rebuttal testimony. Detective Ryan testified that Russell told him that he had called Amy Hansen before half-time and that fifteen minutes after the call Russell initially noticed police cars and paramedics.

In the instant Petition, Russell does not argue that the statements were not inconsistent with statements he made on cross-examination. Instead, he argues that his statement "was not within the proper scope of cross-examination because petitioner never contended that he did not commit the offense because he was talking to Amy Hanson." Russell asserts that the Illinois Court of Appeals "misunderstood" his argument as being that the testimony was not inconsistent with his statements on cross-examination rather than that the impeachment was improper because the cross-examination questions were beyond the scope of his direct examination, and thus the impeachment was used in response to improper cross-examination.

Reviewing Russell's testimony on direct examination regarding his whereabouts along with stipulations made by the parties regarding telephone calls made and received by Russell's telephone during the course of the evening of the attack on Louise, the court finds that the Illinois Appellate Court properly applied the applicable constitutional law to the facts before it when holding that the suppressed statement was admissible to rebut proper cross-examination.

On direct examination Russell testified that he was in his apartment watching the Super Bowl on the evening of the attack and supported this by testifying that he received a call from Sharon Edmondson, a co-worker, about a bet they had made on the game. To corroborate that testimony, Edmondson obtained the telephone records from her home telephone on that night which showed that a phone call to Russell's telephone number was placed from Edmondson's telephone that evening at 6:12 p.m., lasting one minute. The parties stipulated to the accuracy of

23

Edmondson's telephone records as well as to the fact that the telephone records from Russell's telephone showed no calls were made from Russell's telephone between 5:04 p.m. and 7:11 p.m.[7]

On cross-examination, the prosecutor asked Russell whether he had called Amy Hanson at half time and fifteen minutes later heard sirens, and whether he had told this to detective Ryan. Russell argues that this was not within the proper scope of cross-examination because he never contended that he did not commit he offense because he was talking to Amy Hanson. Russell testified on direct examination that he was home at the time of the attack and that he had spoken to people on the phone. An exception to the exclusionary rule "permits prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the *credibility* of the defendant's own testimony." James v. Illinois, 493 U.S. 307, 312 (U.S. 1990). The court agrees with the Illinois Appellate Court's modified order on denial of rehearing of Russell's direct appeal that Russell's suppressed statement "was introduced in an attempt by the state to show [Russell's] testimony was not credible with respect to his whereabouts at the time of the attack." People v. Russell, 95-1823 at *12 (Ill. App. Ct. April 27, 1998).

Questioning regarding whether Russell made or received other phone calls during the relevant time period was within the scope of the direct examination. Further, evidence that Russell previously told detective Ryan about another phone call made during this period of time, which Russell denied at trial, which was not shown on Russell's telephone records and the parties' stipulated that in fact no calls were made from Russell's telephone during such time

---

[7]The facts in this paragraph are taken from Russell's petition to appeal to the Illinois Supreme Court from his direct appeal in 95-1823 at page 8. The citations to the trial record have been omitted.

period, impeaches Russell's credibility regarding his testimony that he was at home during the time of the attack and that he had spoken to Edmondson during the game.[8]  Based on the record before it, the court finds that Russell has failed to establish that the state court adjudication of his claim resulted in an unreasonable application of federal law or was based on an unreasonable determination of the facts.  Accordingly, the court denies Russell's petition for relief under claim two in its entirety.

## CONCLUSION

For the reasons set forth above, the court denies Russell's petition for a writ of habeas corpus and denies as moot, Russell's motion to expand the record.

**ENTER:**     **September 9, 2002**

Robert W. Gettleman
United States District Judge

---

[8]The prosecution also submitted evidence that the one minute call logged on Edmondson's telephone records could have been caused by her telephoning Russell and getting his answering machine.